James EMBREY, Guardian of Donald L. McNeilley, and the Estate of Donald L. McNeilley, Petitioners,

v.

ROYAL INSURANCE COMPANY OF AMERICA and Royal Indemnity Company, Respondents.

No. 99–0411.

Supreme Court of Texas.

Argued Jan. 26, 2000.

Decided April 20, 2000.

Bob Roberts, Austin, Fred Misko, Jr.,Barbara E. Rosenberg, Dallas, Susan Feller Heiligenthal, Austin, for Petitioners.

Beth D. Bradley, Randy A. Nelson, Dallas, for Respondents.

Justice ABBOTT delivered the opinion of the Court.

The issue in this case is whether Royal Indemnity Company[1] is obligated to pay prejudgment interest, in addition to the policy limits, on a claim by a third party against its insured. We conclude that the insurance policy does not require the pay-

1. Although the parties listed Royal Insurance Company of America as a Respondent in this Court, the parties conceded at oral argument that that company is no longer a party to these proceedings. The court of appeals noted: "It appears that Embrey and the estate abandoned their claim against Royal Insurance Company of America some time ago and that Royal Insurance Company of America remains a nominal party simply because it is represented by the same counsel representing Royal Indemnity Company." 986 S.W.2d 729, 730 n. 1. Indeed, the court of appeals judgment does not even reference Royal Insurance Company of America. Neither does ours.

ment of that prejudgment interest. Accordingly, we affirm the court of appeals' judgment.

## I

Royal Indemnity Company issued a commercial automobile liability policy to R & D Harris Transportation, Inc. ("R & D"). The policy had aggregate limits of $1 million and was written on a standard form promulgated by the Texas State Board of Insurance (now called the Texas Department of Insurance). During the policy term, Donald McNeilly suffered brain damage and later died as a result of a collision involving McNeilly and a vehicle owned or operated by R & D. James Embrey, Donald McNeilly's guardian, the Estate of Donald McNeilly, and Nancy McNeilley (Eller), sued R & D, and Royal Indemnity provided a defense.

The trial court rendered an agreed judgment, to which Royal Indemnity consented, awarding $678,050 plus prejudgment interest to Embrey, as guardian, and to the Estate ("Embrey").[2] It is undisputed that the principal amount of the agreed judgment exhausted the limits of the policy issued by Royal Indemnity.[3] Royal Indemnity paid the principal sum and court costs but refused to pay the prejudgment interest award.

Before the agreed judgment was signed and in conjunction with the settlement agreement, R & D assigned all causes of action for damages it might have against Royal Indemnity to Embrey in exchange for Embrey's covenant not to execute on the judgment, except as against R & D's insurance policies. The parties in the underlying suit agreed to reserve the issue of prejudgment interest for resolution in a subsequent suit.

Embrey then filed this case as both a third-party beneficiary of the policy[4] and as R & D's assignee. As R & D's assignee, Embrey is standing in the insured's shoes for purposes of this lawsuit, basically suing for indemnification of the prejudgment interest award. Both parties moved for summary judgment. Embrey admitted that the policy does not contain any language specifically pertaining to prejudgment interest, but argued that the policy's Supplemental Payments provision, read in conjunction with a State Board of Insurance Order, obligates Royal Indemnity to pay prejudgment interest. On the other hand, Royal Indemnity argued that the policy language could not be construed to provide coverage for prejudgment interest in excess of the policy limits and that the Board Order did not apply. The trial court concluded that the policy does not provide coverage for prejudgment interest and that the Board Order does not apply, and therefore granted Royal Indemnity's summary judgment motion and denied Embrey's motion. The court of appeals affirmed. 986 S.W.2d 729.

■ When both sides move for summary judgment and the trial court grants

---

2. The Estate's representative was not named by either party, and the court of appeals' judgment lists the appellants as "James Embrey, Guardian of Donald L. McNeilly, and the Estate of Donald L. McNeilly." An estate itself is not a legal entity and therefore cannot sue or be sued. *See Henson v. Estate of Crow*, 734 S.W.2d 648, 649 (Tex.1987). But, if the personal representative of an estate participates in the case, the judgment involving the estate may be valid. *See Bernstein v. Portland Sav. & Loan Ass'n*, 850 S.W.2d 694, 699 (Tex. App.-Corpus Christi 1993, writ denied). Because neither party raises this issue, we assume that Embrey is serving as the personal representative of Donald McNeilly's estate in this case.

3. The record is unclear about what happened to the remaining $321,950 of the policy limits. The parties are in agreement, however, that the $678,050 agreed judgment exhausted—to the penny—the remaining policy limits.

4. Embrey claims that he is a third-party beneficiary under the policy as a judgment creditor. Embrey is not a judgment creditor on the policy, though, because he is only a judgment creditor of R & D. The source from which R & D pays the judgment rendered against it is not relevant to Embrey's judgment-creditor status.

one motion and denies the other, the reviewing court considers both sides' summary judgment evidence and determines all questions presented. *See Bradley v. State ex rel White*, 990 S.W.2d 245, 247 (Tex.1999). In examining the evidence, the reviewing court should render the judgment the trial court should have rendered. *See id.* Therefore, we review all grounds asserted in both motions.

## II

■ The policy provides:

The company [Royal Indemnity] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

Coverage A. Bodily injury or

Coverage B. Property damage

to which this insurance applies ... but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

An endorsement to the policy also provides that: "The limit of liability stated in the schedule of this endorsement as applicable to 'each occurrence' is the total limit of the company's liability for all damages because of bodily injury ... as a result of any one occurrence...." Under these provisions, Royal Indemnity must indemnify the insured for liability assessed against the insured up to the amount of the policy limits for any one occurrence. Royal Indemnity argues that a prejudgment interest award is part of the damages the insured is legally obligated to pay because of bodily injury and is thus not recoverable in a situation where, as here, the policy limits have been exhausted.[5] The stipulated facts of this case indicate that the policy limits were exhausted by the principal amount awarded in the settlement.

The policy-the contract between the parties-clearly provides that Royal Indemnity is obligated only for the amount of the policy limits. As such, it cannot be required to pay more than the contractual limit unless there has been a breach of contract, which has not been alleged here. *See Henson v. Southern Farm Bureau Cas. Ins. Co. & Texas Farm Bureau Mut. Ins. Co.*, 17 S.W.3d 652, 653 (Tex.2000). Because the principal sum of the settlement agreement represented Royal Indemnity's entire contractual obligation, the explicit policy language precludes Embrey from recovering prejudgment interest in this case.

Embrey argues, however, that the policy's "Supplementary Payments Provision" provides a basis to recover prejudgment interest. That provision states that Royal Indemnity will pay, in addition to the applicable limits of liability under the policy:

(a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon.

This language does not address prejudgment interest, but instead includes an explicit obligation to pay post-judgment interest. Consequently, the language used in the Supplementary Payments provision unambiguously obligates Royal Indemnity to pay post but not prejudgment interest.

■ Nevertheless, Embrey argues that, although the Supplementary Payments provision does not mention prejudgment interest, the language of that provision should be interpreted to include prejudgment interest based on a State Board of Insurance Order issued for certain types of insurance policies. The State Board of

---

**5.** We express no opinion with regard to whether prejudgment interest would be covered under the policy had the policy limits not

been exhausted in this case. Neither party raises this issue nor disputes that the agreed judgment exhausts the policy limits.

Insurance issued an Order construing identical language used in general liability policies as providing coverage for prejudgment interest. In "General Casualty Bulletin No. 644," the Board approved an amendatory endorsement explicitly stating that all general liability insurance policies effective on or after October 1, 1984 provide coverage for prejudgment interest. The accompanying Explanatory Memorandum stated that the amendatory endorsement "[c]learly indicates that [prejudgment interest] coverage is provided," makes prejudgment interest "payment *not* subject to the policy limits," and states that the rates should not be adjusted to reflect the endorsement. The memorandum further listed the lines of insurance to which the endorsement applies: Boiler and Machinery, Commercial Crime, Farm, General Liability, and Professional Liability.

The parties do not dispute that this particular Board Order does not, on its face, apply to automobile liability insurers. But, Embrey argues that "surely, once the auto insurers learned that the Board's ruling had gone against an insurer writing general liability coverage, no auto insurer would be foolish enough to ask for a similar ruling as to auto policies." Embrey's argument is based on the assumption that there can be no material difference between general liability polices and automobile insurance policies, and that the language required in the former must be required in the latter even without Board action to indicate that such language is required. We disagree and decline to expand the language used by the Board. Because the Board Order applies only to the types of insurance listed—and "Automobile Liability" is not part of the list—the Board Order does not apply to the automobile policy at issue here.

\* \* \* \* \*

In sum, the insurance contract required Royal Indemnity to pay, on the insured's behalf, only those sums that the insured became legally obligated to pay as damages because of bodily injury, up to the policy's limits, and all costs taxed against the insured plus post-judgment interest. Because Royal Indemnity was not required to pay prejudgment interest in excess of the policy limits, we affirm the court of appeals' judgment that Embrey take nothing.